IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DENISE C.,**[1]

       Plaintiff,

v.

**COMMISSIONER OF**
**SOCIAL SECURITY**,

       Defendant.

Civ. No. 1:18-cv-01052-MC

**OPINION & ORDER**

McSHANE, District Judge:

Plaintiff Denise C. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"). The decision of the Commissioner is based on proper legal standards and supported by substantial evidence and so the decision is AFFIRMED and this case is DISMISSED.

## BACKGROUND

On February 6, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income alleging disability beginning February 9, 2010. Tr. 13. The claims were denied initially and upon reconsideration. *Id.* At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on December 20, 2016. *Id.* On May 4, 2017, the ALJ issued a decision finding Plaintiff not disabled. Tr. 27. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION & ORDER

# DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

# THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, February 9, 2010. Tr. 15. The

ALJ determined Plaintiff had the following severe impairments: degenerative disc disease; right carpal tunnel system status post release; left knee medial meniscus tear status post repair; breast cancer; irritable bowel syndrome; anxiety; and somatoform disorder. *Id.* The ALJ determined Plaintiff's impairments did not meet or equal a listed impairment. Tr. 16.

The ALJ determined Plaintiff had the RFC to perform a range of sedentary work, "except she is limited to low stress unskilled work due to her mental health issues." Tr. 18.

The ALJ noted Plaintiff was 40 years old on the alleged onset date and has at least a high school education and is able to communicate in English. Tr. 26. The ALJ found Plaintiff is unable to perform past relevant work. *Id.* Based on her RFC, the ALJ determined Plaintiff was able to perform "nearly all unskilled sedentary positions in the national economy." Tr. 27. As a consequence, the ALJ determined Plaintiff was not disabled. *Id.*

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the

Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) failing to include fibromyalgia among Plaintiff's severe impairments; (2) improperly discounting Plaintiff's subjective symptom testimony; and (3) improperly rejecting the "other" medical source opinion of Plaintiff's treating physician's assistant.

### I. Fibromyalgia

A medically determinable impairment is "severe" at Step Two of the sequential analysis if it significantly limits the individual's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). However, "Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). If the sequential analysis proceeds beyond Step Two, meaning that it has been resolved in the plaintiff's favor, the failure to classify an impairment as severe will generally be harmless. *Id.* at 1049. This is because Step Two "is not meant to identify the impairments that should be taken into account when determining the RFC." *Id.* at 1048-49. "In fact, in assessing the RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at 1049 (internal quotation marks and citation omitted, alterations normalized). "The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* (emphasis in original).

In this case, Plaintiff asserts the ALJ erred by failing to include fibromyalgia among Plaintiff's severe impairments at Step Two of the sequential analysis and, subsequently, failing to account for the limitations caused by fibromyalgia in formulating Plaintiff's RFC.

Fibromyalgia is a rheumatic diseases that cause inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissues, with symptoms that include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue. *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017). Fibromyalgia is diagnosed "entirely on the basis of the patients' reports of pain and other symptoms" and there are "no laboratory tests to confirm the diagnosis." *Id.* (internal quotation marks and citation omitted).

The Commissioner has issued additional guidance for cases involving fibromyalgia, both in terms of establishing when a claimant has a medically determinable case of fibromyalgia and in evaluating fibromyalgia in disability claims. Social Security Ruling ("SSR") 12-2P, *available at* 2012 WL 3104869. Generally, a claimant can establish a medically determinable impairment of fibromyalgia by providing evidence from an acceptable medical source and a "licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide such evidence." *Id.* at *2. However:

> We cannot rely upon the physician's diagnosis alone. The evidence must document that the physician reviewed the person's medical history and conducted a physical exam. We will review the physician's treatment notes to see if they are consistent with the diagnosis of FM [fibromyalgia], determine whether the person's symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the persons physical strength and functional abilities.

*Id.*

In order to establish a medically determinable impairment of fibromyalgia, the diagnosing physician must base his conclusion on:

(1) A widespread history of pain;

(2) At least eleven positive tender points on physical examination or, alternatively, repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and

(3) Evidence that other disorders that could cause the signs, symptoms, or co-occurring conditions were excluded.

*Id.* at *2-3.

In the present case, there is no diagnosis of fibromyalgia from an acceptable medical source. On January 21, 2017, Plaintiff was examined by Dr. Mike Henderson as part of the disability review process. Tr. 1376-78. Dr. Henderson reviewed Plaintiff's medical records and performed a fibromyalgia exam. Tr. 1376-77. Dr. Henderson found some positive tender points but found that "[b]ased on today's test [I] cannot confirm the severity of symptoms," and noted that "[t]here does seem to be some symptom amplification." Tr. 1378. He concluded that "Fibromyalgia is a diagnosis of exclusion and [Plaintiff] does have apparently significant depression and anxiety. One would need to treat this successfully in order to diagnose fibromyalgia." *Id.*

Even if the failure to include fibromyalgia at Step Two was error, the error was harmless because the ALJ appropriately considered the limitations Plaintiff attributed to fibromyalgia in formulating Plaintiff's RFC, as discussed in the following sections.

## II. Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by rejecting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, or a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

During the hearing, Plaintiff testified that she suffers from lymphedema, as well as fibromyalgia, osteoarthritis, and anxiety. Tr. 43-45. Her lymphedema is a chronic condition and causes swelling that worsens with activity. Tr. 46-47. Plaintiff also testified that her spinal issues cause her severe pain, as well as a loss of sensation in her leg. Tr. 51. Plaintiff reported that surgery relieved most of her carpal tunnel symptoms, but that she still is sometimes unable to hold a pen. Tr. 52. Plaintiff testified that she relies on her daughter to do the grocery shopping because her chronic pain interferes with her ability to do it herself. Tr. 53.

Plaintiff also reported suffering from depression and anxiety. Plaintiff testified that her anxiety has become worse since the death of her husband and she began taking psychotropic medication in 2015, although she does not participate in mental health counseling. Tr. 45-46. Plaintiff reported that she cries frequently, which her doctor attributes to depression, but she doesn't "feel comfortable going on any antidepressants." Tr. 53.

### A. Treatment History

The ALJ gave several reasons for discounting Plaintiff's subjective symptom testimony. First, the ALJ noted Plaintiff's treatment history undermined her symptom testimony. Tr. 21-24. The effectiveness of medication and other treatment is an appropriate consideration in assessing subjective symptom testimony. 20 C.F.R. §§ 404.1529(c)(3)(iv-v), 416.929(c)(3)(iv-v). Similarly, an ALJ may rely on "unexplained or inadequately expressed failure to seek treatment or to follow a prescribed course of treatment," or a level or frequency of treatment that is inconsistent with the level of complaints in discounting a claimant's subjective symptom testimony, if "there are no good reasons for this failure." *Molina*, 674 F.3d 1113-14 (internal quotation marks and citation omitted).

With respect to Plaintiff's mental limitations, the ALJ noted an unexplained failure to follow a prescribed course of treatment. Tr. 23-24. Treatment notes from October 2011 indicate that Plaintiff was prescribed lorazepam for her anxiety and that it was effective at controlling her symptoms. Tr. 595, 597. In May 2015, Plaintiff reported a increase her anxiety symptoms following the death of her husband, but also reported that she was not taking lorazepam for her anxiety. Tr. 1242. In July 2015, Plaintiff reported "really bad" daily anxiety. Tr. 1194. Plaintiff was advised to take Effexor, as well as klonopin and lorazepam as needed. Tr. 1197. Plaintiff was also referred to mental health counseling. *Id.* Despite these recommendations, Plaintiff reported

that she was not taking Effexor regularly in October 2015 and denied anxiety or nervousness, although she did report depression. Tr. 1187, 1189. During an examination in November 2015, Plaintiff complained of anxiety, but denied depression, mental problems, or suicidal thoughts. Tr. 1094. In July 2016, Plaintiff was once again not taking Effexor, although she reported that it was effective "but not enough to warrant taking it daily." Tr. 11178. During the same treatment session, Plaintiff also complained of depression and anxiety, but was "reluctant to take meds." Tr. 1178-81. This is consistent with Plaintiff's testimony at the hearing, where she expressed reluctance to take antidepressant medication. Tr. 53. Although Plaintiff's primary care provider has recommended mental health treatment services more than once, Plaintiff told her examining psychologist "I just haven't followed up." Tr. 1390. At the hearing, Plaintiff affirmed that she had never had counseling for her mental conditions. Tr. 46.

On this record, the Court concludes the ALJ appropriately considered Plaintiff's history of mental health treatment, including the efficacy of medication and the unexplained failure to seek counseling despite recommendations from treatment providers.

### B. Objective Medical Evidence

The ALJ also noted that Plaintiff's testimony was inconsistent with the objective medical evidence. Tr. 19. Although "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective symptom testimony." *Carmickle*, 533 F.3d at 1161.

In this case, Plaintiff testified that she suffers from severe lymphedema, but the medical record indicates only mild symptoms. Tr. 1023 ("Mild lymphedema bilateral arms,"), 1088 (Plaintiff "has very mild lymphedema,"), 1108 ("Signs and symptoms consistent with mild Stage I lymphedema" in the right upper extremities, negative in the lower extremities,), 1370-72 ("No soft tissue calcification or soft tissue swelling," and no edema noted in extremities).

Plaintiff also testified that she suffered from debilitating pain and mobility issues, but the ALJ noted that the record contained largely unremarkable findings. Tr. 19-23. *See, e.g.,* Tr. 386 (overall musculoskeletal findings normal, adequate range of motion, no joint abnormalities); 438 (normal gait, station, and posture); 457 (normal gait, normal findings, positive right side straight leg raise test); 572 (negative straight leg raise test, with normal gait, posture, and strength); 910 (spine non-tender to palpation, no tenderness or swelling, normal range of motion without obvious weakness, no visible deformities, cyanosis, clubbing, or edema in extremities, normal gait); 1023 (normal gait, no motor deficits, spine non-tender to palpation, no visible deformities, cyanosis, clubbing, or edema in extremities); 1088 (spine non-tender to palpation, normal gait, no visible deformities, cyanosis, or edema in extremities); 1296 (normal posture, gait, and station, "well-appearing patient in no acute distress."); 1377-78 (pain on axial rotation, diminished sensation and 2/4 reflexes, but normal muscle bulk and tone with 5/5 strength, straight-leg raise tests negative).

On this record, the Court concludes that the ALJ appropriately considered objective medical evidence that contradicted Plaintiff's testimony concerning the severity of her pain and mobility limitations.

### C. Activities of Daily Living

Finally, the ALJ briefly considered Plaintiff's activities of daily living. Tr. 19-20, 23-24. During the hearing, Plaintiff testified that she worked part time as a caretaker in 2011 and 2012.

Tr. 41. The work consisted of dispensing mediation, preparing meals, and running errands. Tr. 41-42. In December 2011, Plaintiff told her treatment provider that her pain medication allowed her to "stay stable" with her activities of daily living, and that she was leaving the country for an extended period to care for a friend who was very ill. Tr. 593; *see also* 589 (in October 2012 Plaintiff reported that she was adjusting after being gone for five months to care for her friend). In *Tommasetti v. Astrue*, 533 F.3d 1035 (9th Cir. 2008), the court noted that the ALJ could properly infer that the plaintiff was not as physically limited as he claimed based on his ability to travel overseas to care for an ailing relative. *Id.* at 1040. The same reasoning applies in the present case and the ALJ properly considered Plaintiff's international travel in weighing her testimony.

On this record, the Court concludes that the ALJ did not err in discounting Plaintiff's subjective symptom testimony.

### III. "Other" Medical Opinion Evidence

Plaintiff argues that the ALJ erred by discounting the opinion of her treating physician's assistant, Denise Ledbetter. The ALJ is responsible for resolving conflicts in the medical record. *Carmickle*, 533 F.3d at 1164. Under the then-operative regulations, the opinion of a physician's assistant was considered an "other medical source," rather than an "acceptable medical source." *See Kimberly S. v. Comm'r*, No. 3:17-cv-01956-HZ, 2018 WL 6198275, at *4 (D. Or. Nov. 28, 2018) (summarizing regulatory developments in the consideration of the opinions of "other medical sources," such as physician assistants and nurse practitioners).

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.

SSR 06-03p, *available at* 2006 WL 2329939, at *3.

While opinions from non-acceptable medical sources may not be given controlling weight, their opinions may be used in determining the severity of the claimant's impairments and how it affects the claimant's ability to work. *Id.* at *2. The ALJ may reject the competent testimony of "other medical sources" for reasons germane to the witness. *Molina*, 674 F.3d at 1111. Germane reasons may include a finding that the testimony contradicts the witness's own earlier testimony or that of other medical specialists, or that the witness was biased. *Dale v. Colvin*, 823 F.3d 941, 944-45 (9th Cir. 2016).

In considering "other medical source" opinions, ALJ should weigh the length of relationship and frequency of contact; the level of consistency with other evidence of record; the degree to which the source presents relevant evidence to support an opinion; the quality of opinion explanation; specialty area expertise, if applicable; and any other factors that tend to refute the opinion. SSR 06-03p, 2006 WL 2329939, at *3-4.

Plaintiff became a patient of Ms. Ledbetter's clinic in 2005, although Ms. Ledbetter only began treating Plaintiff regularly in January 2015. Tr. 1351. On November 30, 2016, Ms. Ledbetter submitted a medical opinion as part of Plaintiff's disability application. Tr. 1351-55. In that opinion, Ms. Ledbetter listed Plaintiff's diagnoses as breast cancer, lumbar and thoracic back pain, depression, fatigue, anxiety, and migraines, although only breast cancer, depression, and possibly back pain were expected to last at least twelve months. Tr. 1351. Ms. Ledbetter reported that Plaintiff would need to lie down or rest for twenty or thirty minutes every one to two hours during the day to help relieve her back pain. Tr. 1352, 1354. Ms. Ledbetter also believed that Plaintiff would periodically need to elevate her legs during the workday. Tr. 1354. Ms. Ledbetter opined that Plaintiff could walk two or three blocks without rest or significant pain; that she could sit for thirty minutes at a time; and stand or walk for twenty minutes at a time. Tr. 1353. Overall,

Ms. Ledbetter believed Plaintiff could sit for two hours and stand or walk for two hours in an eight-hour workday, but that she would need a job that permitted her to shift from sitting to standing or walking. *Id.* Ms. Ledbetter reported that Plaintiff could occasionally lift or carry less than ten pounds and never lift or carry ten pounds or more. Tr. 1354. Ms. Ledbetter also assessed substantial limitations to Plaintiff's ability to perform reaching, handling, or fingering, limiting her to no more than 20% of an eight-hour workday in each area and reporting that Plaintiff would require breaks after using her hands. *Id.* Ms. Ledbetter concluded that Plaintiff's limitations would result in four or more absences each month. Tr. 1355.

The ALJ assigned "little weight" to Ms. Ledbetter's opinion, noting that it was inconsistent with the objective medical evidence in the record. Tr. 25. Consistency with the medical record is an appropriate consideration in weighing "other" medical source testimony. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). In this case, as outlined in the preceding section, the ALJ noted generally unremarkable physical findings. Tr. 386, 438, 457, 572, 910, 1023, 1088, 1296, 1377-78.

The ALJ also concluded that Ms. Ledbetter's opinion was contradicted by the opinion of examining physician, Dr. Henderson. Tr. 25. Dr. Henderson found normal gait, normal muscle bulk and tone, and 5/5 strength in her upper and lower extremities. Tr. 1377. Although Dr. Henderson observed diminished sensation and reflexes, the straight leg test was negative. *Id.* With respect to Plaintiff's carpal tunnel syndrome, Dr. Henderson concluded that the condition "appears to be mild and should not impair her." Tr. 1378. This is at odds with the more severe limitations assessed by Ms. Ledbetter and such a contradiction is a valid basis for discounting Ms. Ledbetter's opinion. *Molina*, 674 F.3d at 1112.

Finally, the ALJ concluded that it appeared Ms. Ledbetter based her opinion on Plaintiff's subjective complaints. Tr. 25. If a treating provider's opinion is based to a large extent on the claimant's self-reports and the ALJ properly finds the applicant not credible, the ALJ may discount the treating provider's opinion. *Ghanim*, 763 F.3d at 1162. In this case, the ALJ reasonably found that Ms. Ledbetter assessment was contradicted by the medical record and therefore likely based on Plaintiff's subjective complaints. As discussed in the previous section, the ALJ properly found Plaintiff less than credible and so reasonably considered this factor in discounting Ms. Ledbetter's opinion.

On this record, the Court concludes that the ALJ gave sufficiently germane reasons for discounting the "other" medical source opinion of Ms. Ledbetter.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

DATED this 10th day of October, 2019.

s/Michael J. McShane
MICHAEL McSHANE
United States District Judge